# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| HOLLIE LINDSAY & JAMES LINDSAY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. CIV-19-00966-PRW |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are Defendant United States' Motion for Summary Judgement (Renewed) (Dkt. 51), Plaintiffs Hollie & James Lindsay's Response in Opposition to Defendant's Motion for Summary Judgment (Dkt. 53), and Defendant United States' Reply to Plaintiff's Response to Motion for Summary Judgment (Dkt. 59). For the reasons set forth below, the Court **GRANTS** Defendant's Motion for Summary Judgment (Renewed) (Dkt. 51) and **DENIES AS MOOT** Defendant United States' pending Motion to Strike Plaintiffs' Designation of IRS Corporate Representative for Trial (Dkt. 64).

### *Background*

In February of 2018,[1] Plaintiffs Hollie and James Lindsay ("the Lindsays") prepared their taxes and mailed both the federal and state tax returns to the Internal Revenue Service

---

[1] In their response, the Lindsays state that the events began in February of 2017—however, Hollie Lindsay's affidavit indicates that date is erroneous, as it states "[e]arlier in 2018, we had mistakenly sent our 2017 state tax returns to the IRS with our federal returns in the IRS Kansas City office." Aff. of Hollie Lindsay (Dkt. 53, Ex. A) at ¶ 2.

1

("IRS") office in Kansas City, Missouri. Somewhat over a month later, they received an envelope containing various W-2s, state returns, and federal returns that belonged to various other taxpayers.[2] The envelope allegedly also contained a letter from the IRS stating that the envelope contained the Lindsays' W-2s and state returns (it did not) and directing the Lindsays to file their state returns with the state.[3] Concerned that their receipt of strangers' W-2s and state returns meant that the IRS had accidentally sent their W-2s and state returns to strangers, on April 5, 2018, the Lindsays attempted to call the IRS.

Here the stories diverge. The Lindsays allege that on the April 5th call, they spoke to an unidentified IRS representative who—in answer to the Lindsays' questions about what happened to their W-2s and state returns—told the Lindsays that the IRS "didn't know exactly but that it was sent somewhere in a 5-state region."[4] The following day—April 6, 2018—the Lindsays drove to their local IRS office in Lawton, Oklahoma. There, they initially alleged that they met with an IRS employee (later identified as Angela Hampton) who both confirmed that the IRS had sent the Lindsays' W-2s and state returns to an unknown destination and informed the Lindsays that the erroneous and unauthorized

---

[2] *See* Sealed Ex. (Dkt. 60).

[3] This alleged letter is not part of the record, nor is there any indication in the record of the IRS admitting that they intended to send the Lindsays' W-2s and state returns back to them. The omission of the letter in the record matters because the allegation in this missing letter stating the envelope contained copies of the Lindsays' W-2s and state returns is at least somewhat consequential. But without the letter there is no evidence or admission that the IRS even made or retained copies of the Lindsays' W-2s and state returns. *See infra Discussion*, Part IV.

[4] Pls.' First Am. Answers to Def.'s First Interrogs. (Dkt. 51, Ex. 11) at ¶ 2. This statement, on which the case rests, takes several different forms when retold throughout the record.

disclosure of their tax information had been caused by "a newer employee at the IRS" who had already been "reprimanded for his/her action."[5] Subsequently, the Lindsays dropped these allegations of confirmation and discussion of a reprimanded employee from their later pleadings and affidavits.

The IRS offers a different version of events. According to its call logs, the call from Hollie Lindsay's phone on April 5th went to an automated IRS phone system where Hollie Lindsay followed a series of automated prompts and ultimately disconnected without speaking to a live IRS employee.[6] The IRS also claims that even if Hollie Lindsay had spoken to an IRS employee, the only way the employee could have known or confirmed that the Lindsays' W-2s and state returns had been sent out in an authorized disclosure would be by accessing the IRS's data retrieval system and looking at the Lindsays' taxpayer account. However, an audit of the system shows that no employee accessed the Lindsays' taxpayer account or reviewed their information prior to April 6, 2021. Furthermore, the IRS claims that only IRS employees in its Incident Management Office can access the database containing wrongful disclosures records, so even if the Lindsays had reached a live IRS employee on April 5th, that employee could not have accessed the particular database needed to confirm the wrongful disclosure.[7]

---

[5] *Id.* at ¶ 3.

[6] *See* Suppl. Answers & Objs. to First Interrogs. (Dkt. 51, Ex. 3) at 2.

[7] To note, the United States does not concede that a wrongful disclosure occurred. However, even assuming a disclosure occurs, the United States seeks to negate Lindsays' allegation by demonstrating that their story of the April 5th phone call does not match the IRS's internal procedures regarding who can access the records of known wrongful disclosures.

3

The facts of the visit to the Lawton IRS office are equally contested. The IRS submits the declaration of the employee with whom the Lindsays spoke—Angela Hampton—who denies making any of the alleged statements confirming the wrongful disclosure or mentioning a junior employee who had been disciplined.[8] Additionally, the IRS submits that records maintained by the third-party Treasury Inspector General for Tax Administration ("TIGTA") demonstrate no IRS employee was ever reprimanded or disciplined in connection with the Lindsays' tax information account.[9]

## *Applicable Law*

### I.    *Standard of Review*

Federal Rule of Civil Procedure 56(a) requires "[t]he court [to] grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In deciding whether summary judgment is proper, the Court does not weigh the evidence and determine the truth of the matter asserted, but instead determines only whether there is a genuine dispute for trial before the fact-finder.[10] The movant bears the initial burden of demonstrating the absence of a genuine, material dispute and an entitlement to judgment.[11] A fact is "material" if,

---

[8] *See* Decl. of Angela Hampton (Dkt. 51, Ex. 5) at ¶ 8.

[9] *See* Decl. of Carie Mellies (Dkt. 51, Ex. 10) at 2–3

[10] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015).

[11] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

under the substantive law, it is essential to the proper disposition of the claim.[12] A dispute is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.[13]

If the movant carries the initial burden, the nonmovant must then assert that a material fact is genuinely disputed and must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; by "showing that the materials cited [in the movant's motion] do not establish the absence . . . of a genuine dispute"; or by "showing . . . that an adverse party [i.e., the movant] cannot produce admissible evidence to support the fact."[14] The nonmovant does not meet its burden by "simply show[ing] there is some metaphysical doubt as to the material facts"[15] or theorizing a plausible scenario in support of its claims. Instead, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether is so one-sided that one party must prevail as a matter of law."[16]

---

[12] *Anderson*, 477 U.S. at 248; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[13] *Anderson*, 477 U.S. at 248; *Adler*, 144 F.3d at 670.

[14] Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp.*, 477 U.S. at 322.

[15] *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[16] *Neustrom*, 156 F.3d at 1066 (quoting *Anderson*, 477 U.S. at 251–52); *Bingaman v. Kan. City Power & Light Co.*, 1 F.3d 976, 980 (10th Cir. 1993)).

*II.    Section 7431(a) Wrongful Disclosure Claims*

Section 6103(a) of the Internal Revenue Code prohibits of tax return information unless expressly authorized by an exception, providing generally that "no officer or employee of the United States . . . shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise under the provisions of this section."[17] Section 7431(a) of the Internal Revenue Code then creates a cause of action under which injured taxpayers may sue the United States for violations of § 6103(a): "If any officer or employee of the United States knowingly, or by reason of negligence . . . discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103, such taxpayer may bring a civil action for damages against the United States."[18] Under this statute, "only a taxpayer whose tax return or return information is claimed to have been improperly disclosed may bring a lawsuit."[19]

To prevail in a § 7431(a) action, a plaintiff must generally prove three things about the disclosure: (1) that the disclosure was unauthorized, (2) that the disclosure was made knowingly or by reason of negligence, and (3) that the disclosure violated statutory prohibition.[20] But all that assumes that a disclosure took place. If the evidence doesn't

---

[17] 26 U.S.C. § 6103(a)(1); *see also Rice v. United States*, 166 F.3d 1088, 1090 (10th Cir. 1999).

[18] 26 U.S.C. § 7431(a).

[19] *Norman E. Duquette, Inc. v. C.I.R.*, 110 F. Supp. 2d 16, 23 (D.D.C. 2000).

[20] *See* § 7431(a); *see also Rice*, 166 F.3d at 1090.

establish that there was a disclosure, summary judgment for the defendant is appropriate. Circuit law establishes that when considering a motion for summary judgment "'where the nonmoving party will bear the burden of proof at trial on a dispositive issue'" such as whether disclosure even occurred, the nonmoving party must "'go beyond the pleadings' and 'designate specific facts' so as to 'make a showing sufficient to establish the existence of an element essential to that party's case' in order to survive summary judgment."[21]

### *Discussion*

The United States argues that summary judgment in its favor is warranted because the Lindsays "failed to make a showing sufficient to establish" that any disclosure occurred, which is "an element essential to that party's case, and on which that party will bear the burden of proof at trial."[22] The Lindsays respond that the fact of disclosure was confirmed during the April 5th telephone call and the April 6th visit to the Lawton IRS office. While these are disputes of material facts, the Court must determine if each factual dispute—whether disclosure occurred, whether disclosure was confirmed in the April 5th phone call, and whether disclosure was confirmed in the April 6th meeting—is genuine and sufficient to survive summary judgment.[23] The Court addresses each of the factual disputes in turn and concludes by addressing the other minor points raised by the Lindsays.

---

[21] *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998).

[22] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[23] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'").

*I.    Disclosure*

First, the United States argues that after a thorough review of its internal databases "there is no indicator on the Plaintiffs' account reflecting that the IRS identified a wrongful disclosure of the type Plaintiffs allege."[24] Of course, there may very well be disclosures that the IRS never discovers or records in its databases. But since the Lindsays themselves present no outside evidence of a wrongful disclosure, their only evidence of disclosure comes from the allegations that two separate IRS employees confirmed the disclosure.[25] However, for either of these two employees to have known of the wrongful disclosure in the first place, a record of the wrongful disclosure would need to exist somewhere in the IRS database. Thus, if the IRS itself had no knowledge or record that a wrongful disclosure had occurred, no employee could have possibly known of the disclosure or subsequently told the Lindsays of a disclosure. Other courts have found evidence from the IRS's databases (such as the Integrated Data Retrieval System, or "IDRS," consulted here) to provide sufficient factual basis for summary judgment.[26]

The Lindsays, in response, reframe the United States' position as "there is no wrongful disclosure because, if there had been one, it would have turned up in the ten

---

[24] Def.'s Mot. for Summ. J. (Renewed) (Dkt. 51) at 9; *see also* Decl. of John Walker (Dkt. 51, Ex. 7) at ¶ 13–15.

[25] First, by the unnamed IRS representative during the April 5th telephone call; second, by Ms. Hampton during the April 6th meeting.

[26] *See Lunnon v. United States*, 2021 WL 285931 (D. N.M. July 8, 2021); *Maehr v. IRS*, 2021 WL 2636431 (D. Colo. May 24, 2021).

month-long investigation and comprehensive deep database search"[27] and simply argue that "Plaintiffs have little faith in the ten-month IRS investigation" and "relying on [the investigation] as evidence that a wrongful disclosure did not happen is absurd."[28] The Lindsays also repeat their assertion from the motion to dismiss stage that "[f]acts concerning where Plaintiffs' returns and W-2s were sent and which employees sent them are facts solely within the possession of Defendant."[29]

The Lindsays' reframing of the United States' argument avoids the point. The appropriate conclusion drawn from the United States' argument is not that there was no wrongful disclosure, but rather that the United States itself has no record of a wrongful disclosure, therefore none of its employees could possibly have had the requisite knowledge to subsequently tell the Lindsays about a wrongful disclosure, therefore the Lindsays have no evidence of a wrongful disclosure. As to the assertion that any knowledge of a wrongful disclosure is "solely within the possession" of the United States, the Court agrees. The Lindsays presented no outside evidence of a wrongful disclosure and instead challenged the United States to present the facts of the wrongful disclosure. But the United States has now conducted "ten months of full and robust discovery"—which it shared with the Lindsays—and found nothing to "support Plaintiffs' theory that the IRS disclosed their tax return."[30] The Lindsays may not sustain a "genuine" factual dispute by simply claiming

---

[27] Pls.' Resp. to Def.'s Mot. for Summ. J. (Dkt. 53) at 1.

[28] *Id.* at 3.

[29] *Id.* at 14.

[30] Def.'s Mot. for Summ. J. (Renewed) (Dkt. 51) at 3.

to have "little faith" in the process.[31] Questioning the IRS's veracity while producing no evidence of their own is insufficient to genuinely dispute the fact of disclosure. The Court thus concludes that the material fact of no disclosure is not genuinely disputed and should not be submitted to a jury.

## II.    The April 5th Telephone Call

To resurrect the genuine dispute on the fact of disclosure, the Lindsays assert that "[t]he IRS ignores the fact that a representative of the IRS told Plaintiff Hollie Lindsay their W-2s and state returns" were wrongfully disclosed.[32] The evidence presented by the Lindsays, however, falls short of supporting this allegation. The affidavit submitted by Hollie Lindsay merely states that she "did in fact speak with an IRS representative over the telephone" on April 5th.[33]

In response, the United States relies on three pieces of record evidence. First, the IRS call logs reflect that Hollie Lindsay made one single phone call on the morning of

---

[31] *See* 10A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.2 (4th ed. 2021) ("If the summary-judgment movant makes out a prima facie case that would entitle him to a judgment as a matter of law if uncontroverted at trial, summary judgment will be granted unless the opposing party offers some competent evidence that could be presented at trial showing that there is a genuine dispute as to a material fact."); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

[32] Pls.' Resp. to Def.'s Mot. for Summ. J. (Dkt. 53) at 18.

[33] Aff. of Hollie Lindsay (Dkt. 53, Ex. A) at ¶ 4, ¶ 11. While the Lindsays' response alleges that the unnamed IRS representative confirmed the disclosure, the affidavit in support of the response merely alleges that Hollie Lindsay spoke to an unnamed IRS representative, with no mention of the alleged confirmation of disclosure.

April 5th to an "automated line" where she then "followed the automatic prompts and the call was ended without Plaintiffs speaking to an IRS employee."[34] Second, the United States offers evidence that only IRS employees within the Incident Management Office can access the particular database that records wrongful disclosures, so even if the April 5th call had reached a real employee, any "call-line employee would not have been able to confirm that Plaintiff's return information had been disclosed."[35] Finally—since the Lindsays theorize a "certainly plausible" scenario where the unknown IRS representative "call[ed] the proper department and found out" about the wrongful disclosure while the Lindsays were on hold[36]—the United States audited the system containing taxpayer information and discovered that no IRS employee in any office accessed the Lindsays' account on the day in question.[37]

The burden on the Lindsays here is not a heavy one, but to survive summary judgment they must "do more than refer to allegations of counsel contained in a brief"[38] and "show specific facts, as opposed to general allegations, that present a genuine issue

---

[34] Def.'s Mot. for Summ. J. (Renewed) (Dkt. 51) at 10; *see also* Suppl. Answers & Objs. to First Interrogs. (Dkt. 51, Ex. 3) at 2 ("The call never reached an IRS live employee and the call was disconnected.").

[35] Def.'s Mot. for Summ. J. (Renewed) (Dkt. 51) at 11; *see also* Decl. of John Walker (Dkt. 51, Ex. 7) at ¶ 21.

[36] Pls.' Resp. to Def.'s Mot. for Summ. J. (Dkt. 53) at 19.

[37] *See* Def.'s Mot. for Summ. J. (Renewed) (Dkt. 51) at 10–11; *see also* IDRS Audit Docs. (Dkt. 51, Ex. 6) at 2, 3 (showing the first time the Lindsays' account was accessed occurred on April 6, 2018).

[38] *Thomas v. Witchita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992).

worthy of trial."[39] As slight as the burden is, the Lindsays fail to carry it. For the April 5th call, the United States has identified "uncontroverted, operative facts contained in the documentary evidence."[40] The Lindsays' only submission is an affidavit restating their general allegations (without even specifically alleging in the affidavit that the April 5th call informed them of the alleged wrongful disclosure). They neither attempt to rebut the evidence presented by the United States nor "designate 'specific facts showing that there is a genuine issue for trial.'"[41] The Court finds that on this point the single affidavit statement without additional evidence is insufficient to create a genuine dispute.[42] Therefore, the Lindsays have not submitted evidence sufficient "that a reasonable jury could return a verdict for the nonmoving party."[43]

III.    *The April 6th Visit to the Lawton Office*

The only other possible inference of a wrongful disclosure comes from the Lindsays' initial claim that the alleged wrongful disclosure was confirmed by Ms. Hampton at the Lawton IRS office when the Lindsays visited on April 6th and that Ms. Hampton "informed the Lindsays that a newer employee at the IRS was responsible for sending out their tax return to an unauthorized location and that this employee had been

---

[39] 10A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.2 (4th ed. 2021); *see also Celotex*, 477 U.S. at 322–24.

[40] *Witchita Coco-Cola*, 986 F.2d at 1024.

[41] *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(c)).

[42] *See First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 289 (1968) (affirming summary judgment where petitioner's allegation of conspiracy was without probative force and respondent's evidence demonstrated the absence of any conspiracy).

[43] *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

reprimanded."[44] However, the Lindsays omit this allegation from both their response in opposition to the motion for summary judgment and Hollie Lindsay's affidavit in support, shortening the account of the meeting to only state that Ms. Hampton "does not recall how she advised Plaintiffs."[45]

In any event, the United States has submitted multiple pieces of evidence to demonstrate that this fact is not genuinely disputed. First, the United States submits that the IRS E-trak database contained no record of a disclosure, thus no IRS employee could have confirmed the disclosure. Second, Ms. Hampton did not have access to the IRS E-trak database or the disciplinary records database, and thus could not possibly have confirmed either the alleged disclosure or the alleged disciplinary action even if the IRS did had such records.[46] Third, Ms. Hampton herself testified: "I did not advise the Lindsays that their

---

[44] Pls.' First Am. Answers to Def.'s First Interrogs. (Dkt. 51, Ex. 11) at ¶ 3.

[45] Pls.' Resp. to Def.'s Mot. for Summ. J. (Dkt. 53) at 24. The Lindsays vaguely state "Plaintiffs stand by their interrogatory responses . . . as to what occurred in Lawton." *Id.* at 23. However, the Court notes that the Lindsays' sworn interrogatory responses include other allegations that the Lindsays subsequently dropped or directly contradicted after learning through discovery that the IRS did not have the capabilities to take the alleged actions (such as "freezing" a Social Security number or credit score). *Compare* Pls.' First Am. Answers to Def.'s First Interrogs. (Dkt. 51, Ex. 11) at ¶ 2, ¶ 5 ("[T]he IRS would freeze their Social Security numbers" and "[Plaintiffs'] credit was already frozen . . . it was done by Defendant by and through its agents."), *with* Decl. of Angela Hampton (Dkt. 51, Ex. 5) at ¶ 11, ¶ 12 ("The IRS does not freeze taxpayers' credit, and the IRS does not control the credit bureaus. . . . The IRS does not freeze social security numbers.") *and* Pls.' Resp. to Def.'s Mot. for Summ. J. (Dkt. 53) at 10 ("Plaintiffs . . . called all three major credit bureaus to freeze their credit.").

[46] *See* Decl. of Angela Hampton (Dkt. 51, Ex. 5) at ¶ 10 ("If the Lindsays' tax returns were wrongfully disclosed and an IRS employee was disciplined, I would not have had access to any such report."); Decl. of John Walker (Dkt. 51, Ex. 7) at ¶ 21 ("Plaintiffs' allegations that various IRS employees told the Plaintiffs details about the alleged wrongful disclosure either over the phone or at the Lawton, Oklahoma IRS office are incongruent with the way

tax return information had been disclosed . . . . [a]fter reviewing IDRS, I can confirm that there is no information in IDRS to suggest that the IRS disclosed the Lindsays' tax return."[47] Finally, the United States also consulted TIGTA—an entity independent of the IRS that reviews IRS employee misconduct—which confirmed that no employee was ever reprimanded or disciplined in connection to the Lindsays' account.[48]

The burden on a nonmoving party seeking to survive summary judgment is clear: "the nonmoving party may not rest on its pleadings"[49] but must instead "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."[50] Furthermore, even when pled properly, a "mere scintilla of evidence" is not sufficient to defeat summary judgment.[51] As the Supreme Court explained, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment,"[52] since "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving

---

the IRS stores information about unauthorized disclosures. IRS campus employees—such as IRS hotline operators and field office personnel at the Lawton, Oklahoma office—do not have access to the E-trak database.").

[47] Decl. of Angela Hampton (Dkt. 51, Ex. 5) at ¶ 8.

[48] *See* Def.'s Mot. for Summ. J. (Renewed) (Dkt. 51) at 12–13; *see also* Decl. of Carie Mellies (Dkt. 51, Ex. 10) at 2–3 ("My search did not locate any record of any IRS employee being reprimanded in connection with any disclosure of the Plaintiffs' tax return or tax return information.").

[49] *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993).

[50] *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

[51] *Vitkus*, 11 F.3d at 1539 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 245 (1986).

[52] *Liberty Lobby*, 477 U.S. at 247–48.

party, there is no 'genuine issue for trial.'"[53] Thus, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."[54]

Here again, the Court finds that the Lindsays have failed to provide evidence sufficient "that a reasonable jury could return a verdict" in their favor on whether Ms. Hampton confirmed the threshold fact of disclosure.[55] First, as an initial matter, as the "party opposing summary judgment" the Lindsays must argue "that a material fact is genuinely disputed [and] must support that contention either by citing to materials in the record supporting a genuine factual dispute or by showing that the material in the record does not establish the absence of a genuine dispute."[56] At this stage of proceedings, the Lindsays did not bother arguing that Ms. Hampton confirmed the disclosure in their response in opposition to summary judgment. Nor did they allege such in Hollie Lindsay's affidavit, nor did they even cite to their own interrogatory responses. The Court concludes that, given their complete silence on the issue, the Lindsays have failed to clearly set forth

---

[53] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

[54] *Scott v. Harris*, 550 U.S. 372, 381 (2007).

[55] *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

[56] 10A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.2 (4th ed. 2021); *citing* Fed. R. Civ. Pro. 56 ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials.").

specific facts that could demonstrate the existence of a genuine dispute on whether Ms. Hampton confirmed disclosure. Additionally, even if the Lindsays' vague "stand by their interrogatory responses" line had qualified as introducing specific facts, this briefly-mentioned, seemingly-abandoned, and contradictory account of the April 6th meeting is nothing more than a "mere scintilla of evidence"[57] that is "blatantly contradicted by"[58] the record evidence. Thus, there is no genuine dispute regarding whether Ms. Hampton confirmed that the IRS disclosed the Lindsays' tax returns.

## IV.   *Miscellaneous Evidence*

Finally, the Court concludes that various other points the Lindsays claim "together amount to genuine issues of material fact" fail to present evidence sufficient to survive summary judgment. First, the Lindsays claim that their receipt of other taxpayers' tax returns is evidence that their own tax returns must have been sent elsewhere and thus wrongfully disclosed.[59] However, as the United States correctly observes, the only thing proven by this receipt of third-parties' tax returns is that the Lindsays' were the recipients of a wrongful disclosure, not the victims of a wrongful disclosure themselves.[60] Second, the Lindsays claim that the IRS's failure to produce copies of their tax returns is proof that

---

[57] *Vitkus*, 11 F.3d at 1539 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 245 (1986)).

[58] *Scott*, 550 U.S. at 381.

[59] *See* Pls.' Resp. to Def.'s Mot. for Summ. J. (Dkt. 53) at 22–23.

[60] *See* Def.'s Mot. for Summ. J. (Renewed) (Dkt. 51) at 11–12; *see also Norman E. Duquette, Inc. v. C.I.R.*, 110 F. Supp. 2d 16, 23 (D.D.C. 2000).

those tax returns were sent somewhere, and therefore wrongfully disclosed.[61] However, the only indication that the IRS ever made or retained copies of the Lindsays' tax returns comes from the IRS letter the Lindsays allegedly received, which was never produced or placed in the record (although all other contents of same envelope were). The IRS has never admitted that they made or retained copies of the Lindsays' tax returns, so there is no evidence that any copies of the tax returns exist to have gone missing. Third, the Lindsays argue that if the IRS databases contained no records of the wrongful disclosure, this proves that the databases are faulty as the Lindsays repeatedly filed complaints and affidavits with the IRS that should have been discovered.[62] However, this contention is based on a misunderstanding of the system, as the United States clarified in its reply brief that the database searches disclosed all of the Lindsays filed complaints, just no evidence that a disclosure actually occurred.[63]

Finally, the Lindsays spend great effort arguing that even if no single piece of evidence establishes that a wrongful disclosure occurred, "when the individual pieces of evidence in this case are viewed together, a picture of wrongful disclosure clearly emerges." In support of this proposition, the Lindsays cite the Tenth Circuit's opinion in *Champagne Metals v. Ken-Mac Metals, Inc.*: "individual pieces of evidence, insufficient

---

[61] *See* Pls.' Resp. to Def.'s Mot. for Summ. J. (Dkt. 53) at 18–19.

[62] *See id.* at 2–3.

[63] *See* Def.'s Reply to Pls.' Resp. (Dkt. 59) at 2–3 ("The RS records reflect the interaction between the Plaintiffs and the IRS at the Lawton, Oklahoma office . . . . [and] the identity theft affidavits that Plaintiffs submitted. . . . [but] [t]he E-trak database houses identified reports of disclosure (i.e. where a disclosure occurred). The E-trak database does not track ethereal allegations of disclosure.").

in themselves to prove a point, may in cumulation prove it."[64] However, the rest of the *Champagne Metals* opinion closes the door on the Lindsays' case: "[t]he nonmovant [must present] 'facts such that a reasonable jury could find in [its] favor'" and "[nonmovant party's own] statement, alone, does not meet this burden."[65] While it is true that on summary judgment the Court considers the cumulative evidence, this cumulative presentation must still be sufficient to "lead a rational trier of fact to find for the non-moving party," or else "there is no 'genuine issue for trial.'"[66] And in absence of specific direction from the parties, the Court "will not search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury."[67]

### Conclusion

The Court finds that summary judgment for the United States is appropriate since the Lindsays "fail[] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"[68]—namely, they "failed to produce any evidence to show that any disclosure occurred."[69] While the Lindsays continue to dispute the material facts through their

---

[64] *Champagne Metals v. Ken-Mac Metals, Inc.*, 458 F.3d 1073, 1081 n.6 (10th Cir. 2006) (quoting *Bourjaily v. United States,* 483 U.S. 171, 179–80 (1987)).

[65] *Id.* at 1084 (quoting *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005)).

[66] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[67] *Thomas v. Witchita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1025 (10th Cir. 1992).

[68] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[69] *Wewee v. United States*, 2001 WL 429823, at *4 (D. Ariz. March 29, 2001).

allegations and filings, the specific facts evinced in the record demonstrate that this dispute is not genuine or sufficient to submit to a jury.

For the foregoing reasons, the Court **GRANTS** Defendant United States' Motion for Summary Judgment (Renewed) (Dkt. 51). The Court also **DENIES AS MOOT** Defendant United States' Motion to Strike Plaintiffs' Designation of IRS Corporate Representative for Trial (Dkt. 64).

**IT IS SO ORDERED** this 20th day of September 2021.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE